IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JAMEY PAUL BURRAGE                                                     PLAINTIFF

V.                                              CIVIL ACTION NO. 1:20-CV-00180-DAS

LEE COUNTY                                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

On March 4, 2021, Plaintiff Jamey Paul Burrage, an inmate currently incarcerated in the

Lee County Adult Detention Center, appeared before the Court for a hearing pursuant to *Spears*

*v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis

for his claims filed under 42 U.S.C. § 1983.  A plaintiff's claims will be dismissed if they "lack[]

an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest

that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998) (citations omitted).  The

Prison Litigation Reform Act[1]("PLRA") applies to this case because Plaintiff was incarcerated

when he filed this lawsuit.  As plaintiff consented to United States Magistrate Judge jurisdiction

in this case in accordance with 28 U.S.C. § 636(c), the undersigned has the authority to enter this

order and the accompanying judgment.

### Plaintiff's Allegations

Burrage alleges that church services have not been permitted at the Lee County Adult

Detention Center since February of 2020.  More specifically, Burrage contends that the jail has

not allowed a preacher or worship leader access to the facility because of the coronavirus

("COVID-19") pandemic.

---

[1] 28 U.S.C. § 1915.

Burrage additionally alleges that the jail failed to provide him a proper diet, arguing that federal law requires that inmates be provided 2,200 calories daily, which he believes he did not receive. Burrage, however, admits that the food provisions improved since filing the instant lawsuit, and that his diet now includes the desired 2,200 caloric intake.

On or about August 20, 2020, Burrage filed this action challenging the conditions of his confinement under Section 1983 against Defendant Lee County. Doc. # 1. By way of relief, Burrage asks for compensatory and punitive damages in the amount of one million dollars. *Id.*

Discussion

Burrage claims that the jail's continued denial of access to religious leaders violates his constitutionally-protected right to practice his religion. He further asserts a constitutional violation based on the jail's alleged failure to provide him a daily diet consisting of 2,200 calories.

*First Amendment - Free Exercise of Religion*

A prison policy or practice will not be found unconstitutional as long as it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987). This general statement of the law has been upheld when the regulation completely stifled a group of Muslim inmates' opportunity to attend Jumu'ah, the central religious ceremony of the Muslim faith, analogous to Christian Sunday services or Saturday services of the Jewish faith. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987). This rule has also been applied to require Rastafarians to cut their hair, even though keeping one's hair unshorn and unwashed is a tenet of the Rastafari religion. *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992).

2

Burrage concedes that the jail's decision regarding restricted access to visitors is due to COVID-19. The Court finds that, without question, taking such precautionary measures to prevent (and protect against) the spread of COVID-19 within its facility constitutes a legitimate penological objective. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020 (emphasizing the seriousness of possible transmission of COVID-19 in a prison setting and the health risks to those who contract the disease); *see also Wilcox v. Lacour*, 2021 WL 230113 *8 (W.D. Mich. Jan. 22, 2021) (finding that concerns about COVID-19 constituted a legitimate penological interest in the context of a claim for forced administration of medical treatment); *United States v. Topps*, 2020 WL 5890433 *16 (D. Alaska October 1, 2020) (finding the protection of inmates and staff against COVID-19 to be a legitimate governmental interest warranting the prison's restriction of access to visitors, including inmates' attorneys). Accordingly, the Court finds that Burrage's First Amendment claim is without merit.

*Application of RLUIPA*

The Constitution is not the only source for protecting an inmate's right to worship. In fact, the Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., 42 U.S.C.A. § 2000cc et seq. ("RLUIPA"), provides more expansive rights than those protected by the Constitution. RLUIPA provides, in pertinent part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005). As discussed above, the prevention of, and protection against, the spread of COVID-19 within the detention facility clearly constitutes a compelling governmental interest. In filing the instant action, Burrage seeks only monetary damages. Monetary damages, however, are not available under RLUIPA, rather RLUIPA only permits relief in the form of an injunction. *Sossamon v. Texas*,

3

563 U.S. 277 (2011); *see also Mitchell v. Mississippi Dep't of Corrections*, 2015 WL 1523774 (N.D. Miss. Apr. 2, 2015). Moreover, the PLRA "prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged." *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008) (holding that the principle applies to claims brought under the First Amendment and RLUIPA). Burrage has not alleged any physical harm resulting from the alleged denial of his right to worship. Accordingly, any claim under RLUIPA must fail.

*Eighth Amendment- Sufficient Nutrition*

The Eighth Amendment requires that prisoners be provided meals nutritionally sufficient to sustain their normal health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1996)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (internal quotations and citations omitted). Burrage complains that he did not receive a daily diet of at least 2,200 calories. No authority—either from the Constitution or federal law—exists, however, requiring that prisoners be afforded a specific caloric intake. Burrage fails to identify "any specific physical harm" or "that he suffered adverse physical effects . . . nor has he alleged having his health put at risk." *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999); *see also Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986) (finding that a permanent policy of providing the prisoner only two meals a day did not violate the Eighth Amendment so long as no health issues resulted). The Court, therefore, finds that Burrage's allegations do not rise to the level of an Eighth Amendment violation.

## Conclusion

For the reasons set forth above, the Court finds that Burrage has failed to state a cognizable constitutional claim. Accordingly, the instant complaint is hereby **DISMISSED with prejudice** for

failure to state a claim upon which relief can be granted. The instant dismissal shall count as a

**"STRIKE"** under 28 U.S.C.§ 1915(g). A separate final judgment in accordance with this

memorandum opinion and order will issue this day.

      **SO ORDERED** this, the 23rd day of March, 2021.

                       /s/ David A. Sanders
                       **DAVID A. SANDERS**
                       **UNITED STATES MAGISTRATE JUDGE**